AUSA Matthew A. Roth, 313-226-9186
Special Agent Wylie Christopher, 313-337-2187

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

United States of America
v.
CHRISTINA MARIE ROBERTSON

Case: 2:12-mj-30706
Judge: Unassigned,
Filed: 11-21-2012 At 10:48 AM
IN RE: SEALED MATTER (CMP)(MRM)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __September 2007 through January fo 2012__ in the county of _____Wayne_____ in the ___Eastern___ District of ___Michigan___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 2251(a) | Production of Child Pornography - Aiding and Abetting |

This criminal complaint is based on these facts:
See attached affidavit.

[✓] Continued on the attached sheet.

_____
Complainant's signature

Wylie Christopher, Inspector - USPIS
Printed name and title

Sworn to before me and signed in my presence.

Date: __November 21, 2012__

City and state: __Detroit, Michigan__

_____
Judge's signature

Mark A. Randon, United States Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Wylie R. Christopher, for the United States Postal Inspection Service (USPIS), being duly sworn, do depose and state the following:

### I. INTRODUCTION

1.  Your Affiant, Postal Inspector Wylie R. Christopher, hereafter referred to as Affiant, is assigned to the USPIS, Detroit Division. Affiant has been employed as a Postal Inspector since January of 2006. Prior to receiving this position, Affiant completed a twelve week training academy where investigative techniques were taught and developed. In addition to the above mentioned training, Affiant completed more than 200 hours of training related to child exploitation investigations and computer forensics. Affiant is currently assigned to a Multifunctional Team and is responsible for investigations involving the sexual exploitation of children and the trafficking of child pornography through the United States mail.

2.  The information contained within this Affidavit is based on my training and experience, as well as information related to me by other law enforcement officers.

3.  I am submitting this affidavit in support of a Criminal Complaint for a warrant for the arrest of Christina Marie Robertson violating Title 18, United States Code, § 2252 and 2252A – the production of child pornography.

### II. BACKGROUND OF THE INVESTIGATION

4.  In January of 2011, Affiant received information from the USPIS that a child erotica or modeling website hereinafter referred to as, Website 1, was based in Livonia, Michigan.

5.  From January 2011 until April 2011, while operating in an undercover capacity, Affiant visited Website 1. Affiant determined that Website 1 offered hundreds of images of

minor girls for sale. Website 1 also offered to sell different collections of images depicting five particular minor female children.

6. One of the "special" children highlighted on Website 1 was "Alli." Website 1 advertised more than 25 galleries of "Alli." In most of these galleries, "Alli" wore makeup and was dressed and posed in a provocative manner. One gallery for sale was entitled "Neon Alli" and contained 61 images for $45. A sample of the "Neon Alli" gallery was displayed on Website 1 and consisted of three images of a girl under the age of 13 who appeared completely naked and covered with neon body paint. The profile listed her height, weight, year of birth (as 2002), bust, waist, hip, and shoe sizes. It also listed her favorite color.

7. On or around August 2, 2011, while working in an undercover capacity, Affiant, sent a letter via U.S. Mail to CIC at PO Box 531194, Livonia, MI, 48153. This PO Box was associated with Website 1. In the letter, Affiant asked "[d]o you have a new site and can I still buy images?"

8. On or about August 9, 2011, a letter was received via the U.S. Mail from CIC to Affiant. The letter contained the original letter sent from Affiant to CIC with a handwritten message containing a new website, hereinafter referred to as "Website 2," and a code written out as "con code#60204JC06."

9. On multiple occasions, between August 9, 2011 through February 2012, Affiant visited Website 2 in an undercover capacity. Website 2, like Website 1, sold gallery sets of images of female children. Some of the gallery sets focused on seven particular minor girls and contained multiple images of each of the girls.

10. On or about September 30, 2011, while operating in an undercover capacity, Affiant prepared an order form which requested the purchase of three galleries. Affiant also

prepared a Western Union Money Order in the amount of $75 made payable to CIC. Affiant sent the form and the money order by way of the U.S. Mail to CIC, PO Box 531194, Livonia, MI, 48153.

11. On or about October 3, 2011, Affiant received a letter with a return address of CIC, PO Box 531194, Livonia, MI, 48153. The envelope contained a typed letter which indicated that an email address and a $50 service fee were required for images to be burned onto a compact disc. The letter also stated "we prefer online internet delivery via a file sharing site, but can do the other one once we receive the additional funds." The letter appeared to be from someone using the name "REB."

12. Further investigation assisted Affiant in making the determination that "REB," Website 1, and Website 2 were associated with an individual by the name of Donald Croft.

13. On or about October 6, 2011, Affiant requested for the National Center for Missing and Exploited Children (NCMEC) to provide images associated with Donald Croft's (a.k.a. Rebel Shooter) websites ("Neon Alli") and all reports and complaints filed against Donald Croft, Donald R. Croft, Donald Croft II, Donald R. Croft II, Rebel Shooter, Rebel Shooter, Reb, Rebel Gallery, Rebel-Galleries.com, and rebelscsm.net. "Neon Alli" is the title of a gallery of images the NCMEC obtained from other law enforcement officers who were involved in child pornography investigations.

14. NCMEC provided approximately 10 complaints that had been filed from July of 2009 through June of 2011. The complaints related to Donald Croft and Rebel Shooter. NCMEC also provided Affiant with a compact disc containing 2,192 images of "Alli." NCMEC explained that the "Alli" images they provided were received from the Department of Justice and the Federal Bureau of Investigation as a result of two separate child pornography investigations.

All 2,192 images were of "Alli" who appeared to be under the age of 13 years. Affiant spoke to one investigating officer who stated that the Alli images were recovered from a child pornography investigation of an individual who was later determined to be a molester of children. In most of the images "Alli-model.com," "Miss Alli," or "Neon Alli" were printed as an overlay on the images. The images titled "Miss Alli" and "Neon Alli" also had "Copyright CIC P:Rebel_Shooter" as an overlay on the images. Affiant believes that many of the images of Alli, provided by MCECM, constitute child pornography under Title 18, United States Code, Section 2256.

15. One of the "Neon Alli" images (TA55990_2_3162.jpg), depicted Alli standing completely naked and covered with body paint.

16. In another image (TA59596_1_GCoyu_UWMO479dg6qoNtRA--_m.jpg), "Alli" is approximately 6 years old, standing, mostly naked, and wearing a white cowgirl hat and white cowgirl boots. Her genitals and breasts were clearly visible. This particular image was recovered by a law enforcement agency that discovered the image during the execution of a search warrant in a child pornography investigation. The NCMEC has also associated this image with Donald Croft/Rebel Shooter, cataloged images of other "Alli" images, and, with a set of images that have been termed the "Alli" series.

17. On or about October 11, 2011, Affiant, in an undercover capacity, sent a $50 Western Union Money Order to CIC. Affiant also sent a letter which requested to purchase 3 galleries which were entitled "Neon Nahla," "Miss Nahla Gallery 83," and "Miss Alli 171." The money order and form were mailed to CIC, PO Box 531194, Livonia, MI, 48153.

18. On or about October 27, 2011, Affiant received an envelope with a return address of PO Box 531194, Livonia, MI, 48153. The envelope contained a Rite Aid Money Order for

$125, the original letter sent to CIC on or about October 11, 2011, a typed letter, and a "First Time Supporter" letter. The typed letter indicated that Affiant's request to become a Rebel-Galleries Supporter had been denied. The letter also explained that "we have phased out our CD policy and will not be offering them via mail anymore." The typed letter appeared to be from someone using the name "REB."

19. From November 15, 2011 to December 7, 2011, while working in an undercover capacity, the USPIS visited Website 2 and corresponded with REB.

20. On December 7, 2011, the USPIS emailed an order to rebscsm@gmail.com/ Rebel Shooter for four sets of images of three different minor females. At approximately 4:20 PM CST, a response was received from rebscsm@gmail.com/ Rebel Shooter stating, "All looks in order. I will mail you your Verification code as soon as this arrives. Thank you for your support."

21. On December 8, 2011, the USPIS mailed a $60.00 U.S. Postal Service money order, serial number 19288899292, to CIC for the purchase of the four sets of images of the three different minor females.

22. On or about December 13, 2011, the USPIS received a letter via the U.S. Mail from a location in Michigan without a return address. Enclosed was a piece of paper which contained a verification code. Using an undercover email address, the USPIS e-mailed and informed rebscsm@gmail.com/Rebel Shooter that the verification code was received. At approximately 12:40 PM CST, an email was received from rebscsm@gmail.com/Rebel Shooter. A portion of the email stated, "We received your sponsorship and gallery request. The requested galleries have been prepared and uploaded....Thank you again for your support of our

2:13-cr-20568-GER-LJM Doc # 2 Filed 11/21/12 Pg 7 of 18 Pg ID 8

- 6 -

work!!!...REB." The email also provided a link to a file sharing website, a username, and a password.

23. The USPIS followed the instructions provided by REB in the above mentioned email which allowed the USPIS to download the four file folders which contained approximately 232 images of 3 different girls. The girls appeared to be less than 13 years-old. In all of the images, the girls wore make-up and provocative attire. In one image, "Alli Gallery 185 (40).jpg," "Alli" was wearing a white shirt, white thong underwear, and white high-heel boots. She was lying on the floor with her legs open and it appears that she is in the act of blowing a kiss to the camera. Her genitals were partially visible in this image.

24. On January 17, 2012, the USPIS emailed an order to rebscsm@gmail.com/Rebel Shooter with a request to purchase "Miss Alli's Save the Tigers" set of 118 images. A response was received from rebscsm@gmail.com/Rebel Shooter which pertained to the order and how payment would be made for the images.

25. On or about January 17, 2012, the USPIS visited the website, "ligiheaven.com." The website was titled Little Girl Heaven with a subtitle of "Girllover Discussion Forums." An "ABOUT" section on the website stated that "[t]he Little Girl Heaven forums were founded as a refuge for Girllovers and modeling enthusiasts alike." The USPIS found an article dated October 29, 2010, and entitled "Everyone Loves Miss Alli!" The article was an interview of Rebel Shooter.

26. During the interview, Rebel Shooter stated he worked with Webe Web. Affiant has knowledge that Webe Web was a child modeling website which had been investigated for child pornography. The article also mentioned an individual who ran a website called, "Child Web Models" who was arrested and sentenced to 38 years in prison. Rebel Shooter was asked to

comment about the person who ran Child Web Models and stated "I believe Dale and I shared similar views on the first amendment and I know firsthand that he didn't have a very good attorney." Throughout this investigation, any image associated with "Alli" or any derivative thereof, has been directly associated with Rebel Shooter.

27. On or about January 18, 2012, the USPIS discovered the website, "Missalli.tiny-jewels.com." The entry page had a copyright year of 2011. The website had approximately 14 images of "Alli" including images of her topless, provocatively, and/or partially dressed. One image was of her completely naked except for a pink ribbon, fur-like bracelets, with her hands covering her genitals. In two other images, she was wearing a shirt and underwear. In the image, Alli's underwear was pulled down exposing her hip. In another image, Alli was wearing a black fish-net body-suit and her back was to the camera. In another image, Alli was wearing a pink, see-through robe, and pink thigh-high stockings, bending over provocatively with her hands and feet on the floor, with her legs open. The website charged a $49.95 fee for one month of full access to "Alli's" portfolio. An IP address of 94.102.48.85 was associated with this website. Using publicly available searching tools, law enforcement traced IP address 94.102.48.85 as an IP address hosted in the Netherlands,.

28. On January 18, 2012, an email was received from rebscsm@gmail.com/Rebel Shooter which stated he would contact the undercover USPIS email address once payment was received.

29. On January 23, 2012, at approximately 01:04 PM CST, an email was received from rebscsm@gmail.com/Rebel Shooter. The email stated, "We received your sponsorship and gallery request. The requested galleries have been prepared and uploaded....Thank you again for your support of our work!!!...REB." The email also provided a link to a file sharing website, a

username, and a password. The USPIS followed the instructions provided by REB in the above mentioned email. The USPIS downloaded a file folder which contained approximately 119 images of "Miss Alli."

30. In all of the images, "Alli" is completely naked except for body paint. In one image "Alli Save The Tigers.jpg," "Alli" is standing up and her back is to the camera as someone is painting her body with orange body paint. The child's buttock was totally exposed to the camera. In another image, "Alli Save The Tigers (55).jpg," "Alli" is sitting down with her legs open, holding a tiger-like tail, and is completely naked except for body paint, the tail, and what appeared to be tiger-ears. A portion of "Alli's" genitals are exposed in the photograph.

31. On February 21, 2012, a search warrant was executed in Livonia, Michigan, at the residence of Donald Raymond Croft aka Rebel Shooter aka REB. During the execution of the search warrant, computers, computer storage devices, and computer storage media were seized. In addition, documents containing modeling contracts and hundreds of pieces of lingerie and other erotic clothing in small child-like sizes, were seized.

32. During the search warrant, Croft was interviewed regarding the possession, receipt, distribution, and/or production of child pornography and/or child erotica. Prior to any questioning, Croft was read his Miranda warning, waived his rights, and agreed to talk to law enforcement. Croft also read and signed Inspection Service Form 1067, Warning and Waiver of Rights, prior to questioning. Croft made the following statements:

    a. Croft stated he did not produce child pornography. He stated he believed the photographs he captured were art;

b. Croft was asked why girls, under 18 years, were featured on his website wearing provocative clothing. He stated he did not feel clothing could be provocative;

c. Croft was informed that PayPal had filed a complaint against him for selling soiled clothing worn by underage girls. He stated the clothing was not soiled and he did try and sell the used clothing worn by all his models; under or over 18 years of age;

d. Croft was asked about an interview he conducted on the Internet regarding "Miss Alli." During that interview the interviewer stated to Rebel Shooter, "I'm not sure whether you're aware, but I read that Dale Russell, who used to run Child Web Models and had fled down to Mexico around the time of the split; was arrested late last year and sentenced to 38 years in prison earlier this year. Despite the fallout which you had with Child Web Models, from what I understand Dale and yourself shared a fairly good friendship, is there any comments you'd like to make about this." Rebel Shooter stated in the interview, "I don't believe anything I read on the internet. (Even stuff that seems to be "Official") I believe that Dale and I shared similar views on the first amendment and I know firsthand that he didn't have a very good attorney." Croft stated he did not recall making that statement but added it was possible he said something similar to Russell and himself sharing similar views about the 1st Amendment.

e. Croft was asked if "Miss Alli' was his most popular child model. He stated no. Croft stated she was no longer a model because her father discovered she was a child model and did not approve.

f. Croft was asked about the age range of his models. Croft stated he currently had models as young as 4 years and as old as 34 years of age. Croft was asked if the parents of models under 18 years of age were aware their children were models. He stated yes. Croft was asked if he ever photographed children under the age of 18 without the presence of a guardian. He stated no. Croft stated all of the models parents, under the age of 18, signed the modeling contracts.

g. Croft was asked where he conducted photo-shoots of his models. He stated he photographed his models in his residence, the Greenmead Farm in Livonia, Michigan, Henderson's Castle in Kalamazoo, an Embassy Suites Hotel, and Belle Isle.

h. Croft was asked if he photographed nude models. He stated he initially would photograph some models over the age of 18 years of age topless, but it adversely affected his child modeling business therefore he did not actively photograph nude models. Croft stated he did not photograph any models under the age of 18 years nude. He was asked about photographs of "Miss Alli" nude except for body paint. Croft stated he did not consider those photographs nude and stated her mother applied all the paint on Alli.

i. Croft was asked if he ever inappropriately touched or molested a child less than 18 years of age. He stated no. Croft was asked if he ever had a sexual

relationship with any of his models. He stated no. Croft was asked if he ever had a sexual relationship with any of the mothers of his models. He stated he did have a sexual relationship with one mother of a model. Croft was asked if any child pornography would be on any of his computers or computer storage devices. He stated no.

j. Croft stated he saw things before that were much worse than what he produced. He was asked to elaborate and further articulate what he meant by stating he saw things much worse. Croft stated he would plead the 5th regarding that question. Croft was asked if he ever saw child pornography on the Internet. He also stated he would plead the 5th regarding that question.

k. Croft was asked about a fee-based website devoted to "Miss Alli." He stated he did not own that website and he believed some of images on that website may have been stolen from him and/or digitally altered. Croft stated as an effort to reduce the theft of his photographs and for copyrights, he created a self-made encryption code. Croft was asked who had access to his computers and computer storage devices. Croft stated no one had access to his computers or computer storage devices. Croft was asked if his computers or computer storage devices contained any encryption or passwords. Croft stated his computers are not encrypted or password protected.

l. During the interview a photograph was observed on a shelf above his fireplace. Croft stated the person in the photograph was his daughter, she was a model featured on his website, and she was under 18 years of age. Croft stated his daughter's mother was not aware his daughter was a model featured

on his website. Croft was asked about a book about sex trafficking which was found in the basement. He stated he purchased it from a bookstore because he thought it might be interesting.

33. On or about April 12, 2012, the Michigan Internet Crimes Against Children Taskforce completed forensic analyses of the computers and computer storage media removed from Croft's residence which revealed numerous images of child pornography and child erotica that depicted prepubescent and/or pubescent girls. The forensic analysis of Croft's computer revealed the presence of approximately 74 images of Alli. In most of these photographs, Alli was dressed and posed provocatively. In one image, Alli was wearing a sheer white shirt (which was unbuttoned but covered her breasts) and white, partially see-through, lace panties. Alli is posing on her knees and was holding her hair in a provocative manner. In another image, Alli was completely naked and her body appears to be covered with oil. This image was one of approximately 48 of Alli completely naked and oiled. She was sitting with her legs under her buttock and the image only displayed her buttock and feet.

34. The forensic analysis of Croft's camera cards revealed the presence of approximately 134 images of Alli. In one image, created on or about July 7, 2009, Alli was sitting on a chair wearing only a purple, partially see-through, fitted shirt. She was seated so that her feet were also on the chair and her knees were pulled up to her chin. She was not wearing underwear and her completely naked genitals were exposed.

35. Based on the results from the computer forensic examinations of the items seized from Croft's residence, Affiant has determined that Croft produced images of child pornography that depicted the lascivious display of the genital and pubic area of Alli. Croft used a computer and multiple cameras that had traveled through interstate and foreign commerce. Further, Croft

knew that these visual depictions of child pornography would be transported or transmitted using any means or facility of interstate or foreign commerce, the Internet. Specifically, Croft created the images and used the Internet to sell the pictures through his website. On May 29, 2012, a criminal complaint was filed against Croft for the production of child pornography in violation of Title 18, Untied States Code, Section 2251(a).

36. On May 10, 2012, Alli was forensically interviewed by an Immigration and Customs Enforcement Victim Assistance Specialist. Prior to this interview Alli's mother, Christina Marie Robertson was voluntarily interviewed. Robertson was informed Croft was under investigation for the possession, receipt, distribution, and/or production of child pornography and/or child erotica. During this interview, Dustin Newman, was present. Dustin Newman is Alli's father and had joint custody of Alli.

37. During this interview Robertson stated her daughter modeled for Croft for approximately 3 or 4 years. Robertson stated she took her daughter to the studio and put on her make-up. She stated her husband, Donald Robertson, and her two other children would also attend her daughter's photography sessions with Croft. Robertson stated she would remain with her daughter at all times during the photography sessions. Robertson stated photographs of her daughter were usually taken in the basement of Croft's residence in Livonia, Michigan. She stated the basement was essentially partitioned into two areas, one large room and Croft's bedroom. Robertson stated photography sessions also occurred at parks, on a farm with a horse, and in Kalamazoo, Michigan.

38. Robertson stated her daughter began modeling for Croft when she was approximately five years of age and stopped on or about October of 2011. Robertson explained

2:13-cr-20568-GER-LJM Doc # 2 Filed 11/21/12 Pg 15 of 18 Pg ID 16

- 14 -

that her daughter stopped modeling because her body began to mature and develop sexually. Robertson stated Croft was the only photographer her daughter modeled for.

39. Robertson explained that Croft would put the photographs of her daughter on his website. Robertson stated Croft would sell her daughter's photographs and she would be paid 50 percent of the proceeds. She stated Croft did not tell her how much he charged for the photographs he sold. Robertson stated that in the beginning, she would receive approximately $600 a month from Croft. Robertson stated she received that amount approximately two times. She stated she would receive approximately $200 a month from Croft near the end of her daughter's modeling career. Robertson stated her daughter never made statements regarding Croft inappropriately touching or molesting her. Robertson stated there was "no way" her daughter could have been molested because she was always with her.

40. During the forensic interview, Alli was shown a series of photographs which she indicated were images of herself. In one image Alli pulled her panties down which exposed her pelvic area to the focus of the camera. Alli stated Croft made a mistake and took that image.

41. Alli was shown another image of herself completely naked except for cowgirl boots and a cowgirl hat. Alli stated she did not remember taking that photograph. Alli told the interview that she had on a big dress but it fell off of her body. Alli explained that Croft took that photograph by mistake.

42. Alli stated that she sometimes spent the night at Croft's residence, without her mother, but no images were ever taken of her without the presence of her mother.

43. Robertson was interviewed again after the completion of the forensic interview of Alli. During this interview, Robertson was asked if her daughter was ever photographed by Croft while she was not present. She stated she was present every time images of her daughter

were taken. Robertson was shown several images of Alli believed to have been taken by Croft. Robertson stated she remembered the images and stated they were all of her daughter.

44. In one image, Alli was only wearing a blue feathery scarf. Robertson was asked what her daughter had on under the scarf. She stated her daughter only had on panties under the blue scarf. Robertson was asked about the images of her daughter completely naked except for body-paint. She stated her daughter was completely naked in the images and her husband Donald Robertson painted her daughter's body, but she painted her daughter's "private" areas. Robertson was shown a sanitized photograph of Alli completely naked except for a cowgirl hat and boots. Robertson stated there was, "no way she was ever naked." Robertson swore to God her daughter was never naked. Robertson began to cry and stated she thought the image may have been taken by an old barn where her daughter took images and rode a horse. Robertson stated, "She's really naked, no way! I'm being honest." Robertson was asked how old her daughter was in the sanitized image. She stated Alli was approximately 5 or 6 years of age. Robertson stated she did not believe Croft had enough time to take naked images of Alli even if she left her unattended as she went to the bathroom or took a phone call.

45. Robertson was asked about the image of her daughter pulling her panties down. Robertson stated she did not know why Croft would put that image on his website. Robertson stated Croft said he had an attorney review images to make sure the images would not get them in trouble. Robertson stated she had expressed concern about some of the images Croft took of her daughter.

46. Robertson stated she allowed her daughter to model because she thought it was cute and fun and her daughter liked modeling. Robertson denied ever letting her daughter take images like the image of her completely undressed except for the cowgirl hat and boots.

Robertson stated she would not have allowed her daughter to continue modeling if she knew about the naked image.

47. On July 12, 2012, the mother of a 4 year old who modeled for Croft was interviewed. During her interview she stated Croft told her Alli was paid $2000 for modeling for a man by that man's sports car.

48. During the search warrant at Croft's residence, on February 21, 2012, law enforcement seized records of how much the various models earned while working with Croft. These statements indicated that Alli, by modeling for Croft, earned over $30,000 from 2007 until January of 2012. Specifically:

    a. In 2007 the recorded earnings for Alli were $816.11;

    b. In 2008 the recorded earnings for Alli were $6,007.02;

    c. In 2009 the recorded earnings for Alli were $11,784.21;

    d. In 2010 the recorded earnings for Alli were $7,256.37;

    e. In 2011 the recorded earnings for Alli were $3,992.50;

    f. In September of 2011, Alli was paid $1,110; and

    g. In January of 2012, the recorded earnings for Alli were $207.50.

49. Based on Affiant's investigation, Croft exclusively sold the images of Alli on his website.

50. On September 4, 2012, the USPIS conducted a forensic analysis of an external hard drive seized during the February 21, 2012, search warrant of Croft's residence. This forensic analysis revealed the presence of approximately 15,937 images and videos of Alli.

51. Based upon the images discovered during the forensic examinations and the compensation Robertson received for Alli modeling, Affiant believes probable cause exists that

Christina Marie Robertson participated in the production of child pornography in exchange for money. Affiant's investigation has discovered numerous images of child pornography that depict Alli engaged in the lascivious display of her genital and pubic area. These images were produced by Croft. Based on Robertson's admission, she was present when the images were taken. Ultimately, Croft paid Robertson to allow him to produce the images of child pornography that depicted Alli, Robertson's daughter. In turn, Croft posted these images on his website, through the Internet, and sold them. Information provided by NCMEC showed that the images of Alli were discovered in child pornography investigations from around the country.

52.     Based on the above described information, I believe there is probable cause to conclude Christina Marie Robertson violated Title 18, United States Code, Section 2251(a) by assisting any other person (Croft) to produce child pornography. Robertson intended that her minor daughter engage in sexually explicit conduct (the lascivious display of the genital and pubic area of her daughter) for the purpose of producing the visual depiction of such conduct. Once produced, Robertson knew the images would be transmitted or transported through interstate and foreign commerce to be sold.

_____
Wylie R. Christopher
Postal Inspector
US Postal Inspection Service

SUBSCRIBED TO AND SWORN BEFORE ME
this day of November 21, 2012

_____
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE